UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NADIA SESI,

        Plaintiff,

v.

FEDERAL HOME LOAN
MORTGAGE CORPORATION,
and CITIMORTGAGE,

        Defendants.
_____/

Case No. 12-cv-10608

Paul D. Borman
United States District Judge

## OPINION AND ORDER DENYING PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF

This matter is before the Court on Plaintiff's Ex Parte Motion for Temporary Restraining Order, and Preliminary Injunction and/or Expedited Hearing on Motion for Preliminary Injunction. (Dkt. No. 2.)[1] Defendants filed a response. (Dkt. No. 8.) Plaintiff filed a reply. (Dkt. No. 9.) The Court held a hearing on February 23, 2012. For the reasons that follow, the Court DENIES Plaintiff's request for injunctive relief.

**INTRODUCTION**

This is a mortgage foreclosure case. Plaintiff executed a Note promising to pay ABN AMRO Mortgage Group, Inc. ("ABN AMRO") the principal sum of $250,000, plus interest. The loan was secured by a mortgage in favor of ABN AMRO on Plaintiff's home, which she owned as a joint tenant in common with her husband, Manuel. Defendant CitiMortgage, Inc. ("CitiMortgage") took

---

[1] On February 13, 2012, Judge Marianne O. Battani issued a Temporary Restraining Order, restraining Defendants from proceeding with the eviction and otherwise preserving the status quo pending a full hearing on Plaintiff's motion. (Dkt. No. 5.)

1

title to the assets of ABN AMRO, including Plaintiff's mortgage, when the companies merged in 2007. Plaintiff defaulted on the loan and on December 23, 2011, Defendant Federal Home Loan Corporation ("Freddie Mac") obtained a judgment of possession from the 52-4 District Court in Troy, Michigan. Notwithstanding the state court judgment of possession, Plaintiff filed this action asking this Court to set aside the judgment of the state district court and quiet title in Plaintiff, arguing that the recorded mortgage was void *ab initio* because it was never signed by her husband, who owned the home as a joint tenant in common with Plaintiff, and also arguing that the foreclosure was defective under Michigan law because CitiMortgage failed to record its interest in the property prior to the Sheriff's sale.

## I. BACKGROUND[2]

On April 16, 2004, Nadia Sesi executed a Note in favor of ABN AMRO promising to repay $250,000 plus interest. (Defs.' Resp. Ex. A, pp. 12-13, "The Note".) The Note was secured by a mortgage, executed that same day, by Nadia Sesi and her husband Manuel Sesi, in the principal amount of $250,000. (Defs.' Resp. Ex. A, pp. 1-12; Ex. J.) The mortgage encumbered property at 4479 Cypress Drive, Troy, Michigan, a residential property owned by Nadia Sesi and her husband Manuel as joint tenants in common. The parties have provided to the Court three different versions of the April 16, 2004 Mortgage; Plaintiff submits a barely legible copy that appears to be signed only by Plaintiff's husband, Manuel and bears the mark of having been recorded. Defendants submit a more legible copy, although not recorded, that bears the signatures and initials on each page of both

---

[2] The Court takes the facts as set forth in Defendants' response, with the exception of the contested issue regarding the signed/unsigned mortgage which is discussed more fully *infra*. Apart from the issue regarding the operative mortgage document, Plaintiff does not contest Defendants' version of the facts.

Plaintiff Nadia and her husband Manuel. (Compare Defs.' Resp. Exs. A and J.) Defendants also provided to the Court at the hearing on this matter a recorded original that bears both the signatures of Nadia and Manuel. (Copy attached to this Opinion as Exhibit 1.) Plaintiff's counsel did not deny the validity of this dual-signed mortgage at the hearing. All of the mortgage documents provided to the Court bear the same notary signature and stamp. On August 21, 2007, ABN AMRO merged with Defendant CitiMortgage and CitiMortgage became the successor by merger to ABN AMRO, the original lender. (Defs.' Resp. Ex. M.)

Sometime in 2010, Plaintiff Nadia Sesi defaulted on the April 16, 2004 Note by failing to make timely monthly payments. On July 26, 2010, CitiMortgage sent Nadia notice that the loan was in default and that failure to cure the default would result in the commencement of foreclosure proceedings. (Defs.' Resp. Ex. B.) Plaintiff did not cure the default and foreclosure proceedings commenced in September, 2010. On September 24, 2010, CitiMortgage sent Plaintiff a notice that the debt was being accelerated. (Defs.' Resp. Ex. C.) On that same day, CitiMortgage sent Plaintiff and her husband separate notices as co-mortgagors, in compliance with Mich. Comp. Laws § 600.3205(a), explaining their rights as mortgagors to meet with an agent to discuss a potential loan modification agreement. (Defs.' Resp. Ex. D.)

On October 20, 2010, the Sesis contacted the law firm of Trott & Trott, CitiMortgage's designated agent as set forth in the section 600.3205(a) Notice, and requested a meeting. (Defs.' Resp. Ex. E, Affidavit of Linda Hemphill, January 11, 2012, ¶ 4.) On October 20, 2010, separate letters were sent to Nadia and Manuel Sesi as "co-mortgagors" requesting that they provide certain financial information in advance of the meeting with the lender's designate. (Defs.' Resp. Ex. F.) The Sesis did not return the requested financial documents. (Defs.' Resp. Ex. E, Hemphill Aff. ¶¶

3

5,6.)

On October 22, 2010, CitiMortgage and Nadia Sesi entered into a Stipulated Special Forbearance Plan in which Sesi agreed to pay certain amounts on a set schedule to bring the loan current. (Defs.' Resp. Ex. H, Forbearance Agreement.) On November 19, 2010, Trott & Trott sent Nadia Sesi a letter, with a copy to her husband Manuel, indicating that the financial information requested in the letters sent to both of them on October 20, 2010 had not been received and that foreclosure proceedings may commence on or after December 23, 2010. (Defs. Resp. Ex. E, Hemphill Aff. ¶ 7; Ex. G, Nov. 19, 2010 Letter.) Sesi made the payments under the Forbearance Agreement up through April 5, 2011, completing the terms of the Agreement, but failed to make further arrangements or payments to bring and keep the loan current. (Defs.' Resp. 2.)

On May 10, 2011, a foreclosure sale was held and Defendant Freddie Mac was the successful bidder. (Defs.' Resp. Ex. I, Sheriff's Deed.) The statutory redemption period expired on November 10, 2011 with no redemption being made. Because the house remained occupied following the expiration of the redemption period, Freddie Mac filed a complaint in the Troy 52-4 District Court seeking possession. (Defs.' Resp. 3.) A hearing was held on December 13, 2011 at which neither Plaintiff nor her husband appeared. The Court entered a Default Judgment, awarding possession of the property to Freddie Mac. (Defs.' Resp. 3, Ex. K, Judgment, State of Michigan 52-4 Judicial District.) The Sesis then filed in the 52-4 District Court, through the same counsel representing the Plaintiff in the instant action, a motion for relief from the default judgment. Plaintiff's counsel explained to this Court at the hearing on the instant motion for preliminary injunctive relief that the motion for relief from judgment filed in state court set forth the same arguments that are made in this Court regarding the claimed invalidity of the mortgage and the failure of CitiMortgage to register

4

its interest in the Mortgage. The 52-4 District Court held a hearing on the motion to set aside the default and issued an order denying the motion for relief from judgment and ordering the writ of eviction to execute on February 10, 2012. (52-4 District Court Order Denying Defendants' Motion for Relief from Judgment, copy attached to this Order as Exhibit 2.)

Plaintiff filed the instant action on February 12, 2012, expressly requesting that this Court "stay[] the eviction of Plaintiff and any state summary proceedings . . . ." (Pl.'s Mot. 3.) The Court concludes that Plaintiff has little or no chance of success on the merits of her claim, has not established the threat of irreparable harm, has failed to rebut Defendants' claim that they face significant harm if prevented from taking possession and has failed to demonstrate that the public interest would be best served by preventing the eviction from proceeding as ordered by the state district court. Plaintiff is not, therefore, entitled to preliminary injunctive relief.

## II. STANDARD OF REVIEW

Plaintiff bears the burden of demonstrating entitlement to preliminary injunctive relief and the burden is substantial. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Such relief will only be granted where "the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). When considering a motion for injunctive relief, the Court must balance the following factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a TRO, (3) whether granting the TRO would cause substantial harm to others, and (4) whether the public interest would be served by granting the TRO." *Detroit Intern. Bridge Co. v. Federal Highway Admin.*, 666 F. Supp. 2d 740, 746 (E.D. Mich. 2009) (citing *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008)). *See also Overstreet,*

305 F.3d at 573(citing same four factors); *Luckett v. U. S. Nat'l Bank Ass'n*, No. 08-14285, 2009 WL 22858, at *2 (E.D. Mich. Jan. 5, 2009) (setting forth these same four factors in evaluating a motion for a temporary restraining order to enjoin an eviction). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

### III. ANALYSIS

#### A. Likelihood of Success on the Merits

Plaintiff makes two arguments in support of her contention that this Court should enjoin the state court eviction order and award possession to Plaintiff. Plaintiff has little chance of success on either argument and, more importantly, Plaintiff's claims are not properly before this Court which either lacks jurisdiction to hear the matter or alternatively is precluded from granting Plaintiff the relief she seeks by principles of collateral estoppel and res judicata.

##### 1. Plaintiff is unlikely to succeed in her argument that the Mortgage does not bear her signature and therefore is unenforceable.

Plaintiff argues that the recorded mortgage is not signed by both Plaintiff and her husband, who held the property as joint tenants in common, and therefore the mortgage is unenforceable. Plaintiff faces several obstacles in proffering this argument, not the least of which is the lack of clarity in her motion as to who she claims signed the mortgage and who did not. In her motion, Plaintiff states that: "Plaintiff never executed the Mortgage on the property only her late husband signed the Mortgage. (See Exhibit A)." (Pl.'s Mot. 2.) From a review of the attached Exhibit A, which is barely legible, Plaintiff's husband's signature is somewhat legible, while the line for

Plaintiff's signature appears to be blank. The placement of only one signature on the mortgage is, of course, inconsistent with the notation on page 1 and again on the signature page, that the mortgage was signed by both Nadia Sesi "a married woman and Manuel Sesi her husband." (Pl.'s Mot. Ex. A, pp. 1, 9.)

In the body of her brief in support of her motion, however, Plaintiff, in at least three different places, asserts that "[o]n April 16, 2004, Manuel Sesi granted a Mortgage to Abn Amro Mortgage Group recorded on May 21, 2004 at Liber 33103, Page 0170 . . . [but] [t]he recorded mortgage is not executed by the Plaintiff's husband Manuel Sesi (Exhibit A, Complaint)." (Pl.'s Br. 7.) Later in the brief, Plaintiff reiterates that "Michigan Law is clear that the Plaintiff's mortgage lien is void if [sic] was not signed the husband Manuel Sesi," and that "[t]he mortgage that is being enforced is not signed by Plaintiff's husband Manuel Sesi." (*Id.* 11.) Again, in her reply brief, Plaintiff states: "It is clear that the recorded Mortgage is not signed by the husband." (Pl.'s Reply 1.) Thus, while the recorded Mortgage supplied by Plaintiff appears to bear her husband's signature but not hers, her argument is based on the assertion that her husband did not sign the mortgage.

Defendants have provided to the Court an unrecorded copy of the Mortgage, that appears to be a more legible copy of Plaintiff's Exhibit A, but clearly bears the signature of both Nadia and Manuel, as well as the initials of both husband and wife on each page of the Mortgage document. Based on the documents as produced, the Court could not conclude that Plaintiff had a likelihood of success in establishing her claim that the Mortgage is unenforceable given her failure to provide a recorded copy of the Mortgage that clearly shows that the Mortgage was not signed by both Plaintiff and her husband. Exhibit A to her motion, on which Plaintiff relies, bears the same notation that it is being acknowledged by both Plaintiff and her husband and the document is notarized in

accordance with the requirements of Michigan law. Even assuming that the Court accepts Exhibit A as the operative mortgage document, Plaintiff would be unlikely to succeed on her claim that this document is unenforceable under Michigan law.

More importantly, however, at the hearing on this matter, defense counsel provided to the Court the original recorded mortgage which clearly bears the signature of both Nadia and Manuel Sesi. (Copy attached to this Opinion and Order as Exhibit 1.) Upon review of the original, recorded mortgage, counsel for Plaintiff conceded that this argument was likely not sufficient to sustain the request for injunctive relief. Accordingly, the Court concludes that there is little chance that Plaintiff could succeed on her argument that she never signed the mortgage instrument.

Additionally, Plaintiff has not adequately addressed Defendants' argument that, even assuming that Plaintiff could succeed on her argument that the Mortgage was never signed by both husband and wife, Plaintiff is estopped from making such an argument based on subsequent events that clearly establish Plaintiff has waived the right to assert the unenforceability argument by subsequent acts of ratification, waiver and estoppel. Defendants rely on the decision of the Michigan Supreme Court in *Tacey v. State Bank of Linwood*, 242 Mich. 258 (1928), where the court held that the mortgagors waived their right to challenge the validity of an allegedly fraudulent mortgage where the mortgagors had ratified the mortgage by their subsequent acts of ratification. Ratification under such circumstances has long been recognized: "Through operation of the doctrines of ratification and estoppel the invalidity or ineffectiveness of an instrument affecting real property due to nonjoinder of one of the spouses may be removed by joinder in or execution of a subsequent instrument evincing an intention to approve or become bound by the previous one, or to which the law attributes that effect." 7 A.L.R. Fed. 294, Joining in instrument as ratification of or estoppel as

to prior ineffective instrument affecting real property, § 4 "Nonjoinder of Spouse."

In the instant case, Plaintiff sought loss mitigation assistance from CitiMortgage and executed a Forbearance Agreement, acknowledging through receipt of several different documents that she was a mortgagor of the property. Specifically, the Forbearance Agreement, in which Plaintiff acknowledged CitiMortgage's authority to enforce the Note and Mortgage, provided as follows: "CMI is the owner and holder or servicing agent of a certain note and deed of trust/mortgage made and executed by the borrower." (Defs.' Resp. Ex. H.) At the hearing on this matter, counsel conceded that Plaintiff did enter into the Forbearance Agreement and provided the Court with no authority to rebut Defendants' argument that in executing that Agreement, Plaintiff acknowledged CitiMortgage's right to foreclose. Plaintiff cannot on the one hand accept that CitiMortgage had the right to forbear from foreclosure and on the other argue that CitiMortgage has no right to foreclose. Thus, even assuming that Plaintiff could establish that she did not sign the original mortgage, which is in serious doubt given the original mortgage document provided to the Court at the hearing on this matter, she has ratified the Mortgage agreement or is estopped from asserting an argument as to its unenforceability.

### 2. Plaintiff is unlikely to succeed in her argument that the foreclosure sale violated Mich. Comp. Laws § 600.3204(3).

Plaintiff argues that the foreclosure sale should be set aside because CitiMortgage was not the original mortgagee and did not record its interest prior to the date of the Sheriff's sale. Another court in this district considered this same argument in *Payton & Petraska v. Trott & Trott, Federal Home Loan Mortgage and CitiMortgage*, No. 10-14916, Dkt. No. 15, Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, June 28, 2011. United States District

Judge Stephen J. Murphy III concluded in *Payton* that the same Certificate of Merger attached to Defendants' response in the instant case, Exhibit M, satisfied the "substantial compliance" requirement for establishing chain of title under Michigan law: "The certificate of merger attached to Defendants' motion, along with the undisputed reality under New York law that Citi stepped into ABN AMRO's shoes for purposes of the mortgage after their merger, was sufficient in this case to satisfy the statutory requirements." *Payton*, June 28, 2011 Order, 11 (citing *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 101-02 (6th Cir. 2010)).

Plaintiff does not attempt to distinguish *Payton*, but argues that the decision of the Michigan Court of Appeals in *Kim v. J.P. Morgan Chase Bank*, __N.W.2d__, 2012 WL 104463 (Mich. Ct. App. Jan. 12, 2012) somehow undermines the holding in *Payton*. This Court disagrees. In a decision issued subsequent to *Kim*, Judge Avern Cohn of this District faced this very issue regarding the legal effect of the CitiMortgage/ABN AMRO merger on CitiMortgage's recording obligations under the Michigan summary proceedings statute in *Meyer v. Citimortgage, Inc.*, No. 11-13432, 2012 WL 511995 (E.D. Mich. Feb. 16, 2012). In *Meyer*, Judge Cohn first noted, as Judge Murphy noted in *Payton*, that through the merger of CitiMortgage and ABN AMRO, the surviving corporation, CitiMortgage, obtained all rights, privileges, immunities and powers of each of the constituent entities. No "assignment" was necessary to vest CitiMortgage with all right, title and interest in Plaintiff's mortgage: "[T]here is no need for a recorded assignment because the mortgage has not been assigned." 2012 WL 511995, at *2. Judge Cohn noted that this conclusion was consistent with Michigan law, which provides that, in the context of Michigan's foreclosure by advertisement law, "no assignment from [a] merging entity into [a] surviving entity is required for

10

purposes of compliance with M.C.L. 600.3204(3)." *Id.* (quoting *Winiemko v. GE Capital Mtg. Serv. Inc.*, No. 177827, 1997 WL 33354482, at *2 (Mich. Ct. App. Jan. 17, 1997)).

Mich. Comp. Laws § 600.3204(3) applies to "assignments." The Michigan Court of Appeals in *Kim* expressly found there that the defendant had acquired its interest by "assignment." 2012 WL 104463, at *2. Because CitiMortgage stepped into the shoes of ABN AMRO without necessity of assignment, no recording of the mortgage interest was required and CitiMortgage had the right to initiate foreclosure under Mich. Comp. Laws § 600.3204. This case is indistinguishable from both *Payton* and *Meyer*. The decision of the Michigan Court of Appeals in *Kim*, which in any event based its ruling on the fact that the FDIC, and not the defendant, JP Morgan Chase, had acquired the mortgage by "assignment," does not alter the Court's analysis.

This Court agrees with the decisions of the courts in *Payton* and *Meyer*, that the merger between CitiMortgage and ABN AMRO placed CitiMortgage in the shoes of ABN AMRO sufficient to satisfy the chain of title requirements under Michigan law. There was no further requirement under the circumstances of this case that CitiMortgage record the interest in Plaintiff's mortgage that it received from ABN AMRO by operation of the merger. Accordingly, the Court concludes that Plaintiff would be unlikely to succeed on the merits of this claim.

### 3. Plaintiff's failure to act during the redemption period also makes it unlikely that she will succeed on the merits of her underlying claim.

Defendants also argue, persuasively, that Plaintiff lacks standing to challenge the foreclosure at issue because the redemption period has passed. Plaintiff fails to distinguish, or even to address, the case Defendants rely on, *Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889 (E.D. Mich. 2011). In *Drew*, Judge Cohn concluded that plaintiff, who suffered a foreclosure and failed to redeem the

property during the redemption period, lacked standing to challenge the foreclosure proceedings because plaintiff no longer had an interest in the property to support a claim of injury. "Following foreclosure, the rights and obligations of the parties are governed by statute. Upon expiration of the statutory redemption period, the purchaser of a Sheriff's deed is vested with 'all right, title, and interest' in the property. Here JPMC purchased the property at a foreclosure sale on May 5, 2010. When Plaintiff failed to redeem the property before the redemption period expired on November 5, 2010, JPMC became vested with 'all the right, title, and interest' in the property by operation of law." *Id.* at 895 (internal citations and quotation marks omitted).

Other courts in this District have reached a similar conclusion regarding the failure of a mortgagor to act during the redemption period, some courts approaching the issue not as one of standing but rather addressing the argument as one attacking the merits of the claim. *See, e.g. Tatar v. Trott & Trott, P.C.*, No. 10-12832, 2011 WL 3706510, at *7 n.3 (Aug. 3, 2011) (collecting cases and addressing the issue as a merits decision, not a standing decision, and concluding that a failure to challenge a foreclosure during the redemption period deprives the mortgagor of the right to mount a challenge after the redemption period has expired and the purchaser has been vested with all right, title and interest in the property). The only recognized exception to such a result, as the court noted in *Tatar*, is when the mortgagor makes a strong showing of "fraud or irregularity." *Id.* at 8. *See also Galati v. Wells Fargo Bank*, No. 11-11487, 2011 WL 5178276, at *4 (E.D. Mich. Nov. 1, 2011) (analyzing the issue as one of standing and concluding that, having made no attempt to challenge the foreclosure during the redemption period, plaintiff lacked standing to challenge the sale because all right, title and interest vested in the purchaser at the time of the sheriff's sale) (quoting *Overton v. MERS*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009)).

12

Whether analyzed as an issue of standing or as a merits-based challenge, the Court agrees with Defendants that Plaintiff cannot challenge the sale to Freddie Mac in the instant case. Plaintiff has not alleged the type of serious fraud or irregularity that could support setting aside the sale in this case. Indeed the only allegations that even hint at fraud, i.e. those regarding the signatures on the mortgage document, have been seriously undermined if not wholly defeated, as set forth *supra*. For this separate and independent failure of Plaintiff to timely challenge the foreclosure, the Court concludes that Plaintiff has no chance of success on the merits of her claims.

### 4. Plaintiff's claims also are likely barred by the *Rooker-Feldman* doctrine and/or by principles of collateral estoppel and/or *res judicata*.

The *Rooker-Feldman* Doctrine derives its name from two United States Supreme Court cases interpreting 28 U.S.C. §1257(a), which vests review of state court judgments in the Supreme Court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "[28 U.S.C. §1257(a)] is designed to prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking a review of a state-court decision." *Kovacic v. Cuyahoga County Dept of Children and Family Services*, 606 F.3d 301, 308 (6th Cir. 2010). Pursuant to the *Rooker-Feldman* doctrine, "lower courts lack subject matter jurisdiction to review the decisions of state courts." *Givens v. Homecomings Financial*, 278 F. App'x 607, 608-09 (6th Cir. 2008). *Rooker-Feldman* applies to bar "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 609 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The *Rooker-Feldman* Doctrine does not apply, however, to claims that are independent of the state

13

court's judgment. *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) (citing *Pittman v. Cuyahoga County Dep't of Children and Family Serv.*, 241 F. App'x. 285, 287 (6th Cir. 2007)). The Court must determine the "source of the injury." *Id.* (citing *McCormick v. Braverman*, 451 F.3d 382, 394-95). If the source of the alleged injury is not the state court's decision, the claims are considered independent, and the *Rooker-Feldman* doctrine does not apply. *Id.* (citing *McCormick*, 451 F.3d at 394-95).

Plaintiff's counsel conceded at the hearing on this matter that in Plaintiff's motion for relief from the default judgment in state court, Plaintiff proffered each of the same arguments currently advanced in this Court. The 52-4 District Court, Judge Dennis C. Drury, having heard Plaintiff's arguments, entered an order denying the motion for relief from judgment and ordered the eviction to proceed on February 10, 2012, barring further court order. (Order Denying Defendant's Motion for Relief from Judgment, Ex. 2 hereto.) Plaintiff urges this Court to disregard the state court order because Judge Drury expressly permitted the Sesis to appeal his order. However, the fact that the state court acknowledged the Sesi's right to appeal in his order does not change the reality that Plaintiff presented to the state court the same arguments presented to this Court and the state court denied the motion to set aside its prior order granting possession to Freddie Mac.

Plaintiffs here present a classic case for application of the *Rooker-Feldman* doctrine. Both of the Counts of Plaintiff's Complaint, Count I to Quiet Title and Count II to declare the foreclosure invalid under section 600.3204(3), directly attack the validity of the foreclosure and would require the Court to reverse the state court's judgment. "Because the point of this suit is to obtain a federal reversal of a state court decision, dismissal on the grounds of *Rooker-Feldman* [is] appropriate." *Givens*, 278 F. App'x at 609 (citing *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x

14

487, 489-90 (6th Cir. 2005)). *See also Luckett*, 2009 WL 22858 at *3-4 (applying *Rooker-Feldman* and denying a temporary restraining order in a mortgage foreclosure case based upon no likelihood of success on the merits, observing that "there is simply no way for this or any other court to grant relief without disturbing the judgments of foreclosure entered by the state court, and [e]ach of the myriad and vague claims set forth by the plaintiffs rests on the premise that the state court entry of foreclosure was invalid," and concluding that "to sustain the Plaintiff's complaint in this case would require the Court to in effect act as an appellate tribunal and conclude that the Michigan court simply made the wrong decision in the foreclosure and possession action. Under the Rooker-Feldman doctrine, as refined in *Exxon-Mobil*, the complaint clearly is subject to dismissal under Rule 12(b)(1).") (internal quotation marks and citation omitted).

Similarly here, to sustain Plaintiffs' Complaint would require this Court to decide that the Troy District Court made the wrong decision in upholding the foreclosure proceedings and ordering that possession be awarded to Defendant Freddie Mac. Plaintiffs do not state a claim that is independent of the wrong they allege they suffered as a result of the state court judgment - they ask this Court to quiet title in their name and clearly challenge the judgment itself. Their Complaint would be subject to dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[3]

---

[3] The Court acknowledges that there remains some question as to the timing of the final entry of the state court's order denying relief from judgment. If in fact the state court proceeding was still "pending" when Plaintiff filed this action on February 12, 2012, then the *Rooker-Feldman* doctrine would not necessarily operate as a jurisdictional bar to the action. *See Exxon-Mobil*, 544 U.S. at 292-93 (noting that "when there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by entry of judgment in state court. . . . In parallel litigation, a federal court may be bound to recognize the claim - and issue - preclusive effects of a state-court judgment, but federal jurisdiction over the action does not terminate automatically on the entry of judgment in the state court"). However, because the Court finds that several other separate and independent bases exist

15

Even if *Rooker-Feldman* did not apply to bar Plaintiff's action in this Court, Plaintiff's claims likely are barred by principles of *res judicata*. A federal court hearing a case based on diversity jurisdiction applies the law of the state in which it sits in determining the application of *res judicata*. *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 303 (6th Cir. 2011) (citing *Taveras v. Taveraz*, 477 F.3d 767, 783 (6th Cir. 2007)). Michigan employs a "broad view of *res judicata*." *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 817 (6th Cir. 2010) (quoting *In re MCI Telecommunications Complaint*, 460 Mich. 396, 431 (1999)). In Michigan, *res judicata* bars a subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. *Abbot v. Michigan*, 474 F.3d 324, 331 (6th Cir. 2007) (citing *Adair v. State*, 470 Mich. 105, 121 (2004)). *Res Judicata* bars not only claims already litigated, but claims arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. *Dart v. Dart*, 460 Mich. 573, 586 (1999).

This Court must give the same preclusive effect to the state court judgment as another Michigan court would give to that judgment. *Exxon-Mobil*, 544 U.S. at 293. "Michigan has adopted a broad application of the doctrine of res judicata which bars not only claims actually litigated in the prior action, but all claims arising out of the same transaction that the parties, exercising reasonable diligence, could have raised in the prior action but did not." *Luckett*, 2009 WL 22858 at *4. The test for determining preclusive effect is whether the same facts or evidence are crucial to proof of the two claims, not whether the bases for relief are the same. *Id. See also Sewell v. Clean Cut*

---

on which the Court concludes that Plaintiff is not likely to succeed on her claims, and is not entitled to injunctive relief, the Court need not conclusively determine this issue.

*Management*, 463 Mich. 569, 574 (2001) (holding that a state district court judgment issued in a summary possession proceeding is conclusive on the issue of whether the eviction was proper); *Givens*, 278 F. App'x at *2 (upholding district court's dismissal of plaintiff's complaint which sought to effectively appeal the state court order granting possession to JP Morgan, finding plaintiff's claims barred by the doctrine of *res judicata* because they could have been resolved in the state court proceeding).

As Judge Murphy recognized in *Payton*, however, there is an exception to the application of the doctrine of *res judicata* under Michigan law in the case of summary proceedings for possession of property. In *J.A.M. Corp. v. AARO Disposal, Inc.*, 461 Mich. 161 (1999), the Michigan Supreme Court held that the summary nature of such proceedings take them "outside the realm of normal rules concerning merger and bar in order that attorneys would not be obliged to fasten all other pending claims to the swiftly moving summary proceedings." *Id.* at 169. In a subsequent case, *Sewell, supra*, the Michigan Supreme Court clarified that the rule set forth in *J.A.M.* does not permit a claim that was actually litigated in the summary proceeding to be relitigated. In *Payton*, Judge Murphy concluded that plaintiff there, who actually won a favorable judgment in the state court and had title quieted in her name, could not be precluded from asserting a breach of covenant claim in federal court because the breach of covenant claim was separate from the quiet title claim and the outcome of this claim did not "follow inevitably from the judgment in favor of Payton in state court, as was true in *Sewell*." *Payton*, No. 10-14916, Oct. 12, 2011 Order on Mot. for Reconsideration, Dkt. No. 24, 4.

Any claims that Plaintiff seeks to make in this Court either were or could have been brought in the Michigan state court proceedings. Plaintiff's counsel admitted to this Court at oral argument

that he made the "exact same arguments" now made in this Court in the motion to set aside the default judgment in state court, which the state district court heard and denied. The same Quiet Title claim, and wrongful foreclosure claim, are the only claims asserted in this federal court action. This is not a case that calls for application of the principles announced in *J.A.M.* because clearly Plaintiff was not prejudiced by the "swiftly moving" pace of the state court eviction proceeding. In fact, Plaintiff fully briefed these issues and was permitted the opportunity to argue at a hearing in state court the very arguments he makes in this Court. That the state court may not have resolved or addressed those argument to Plaintiff's satisfaction does not change the preclusive effect of that judgment. Accordingly, this case is more closely aligned with *Sewell* than with *J.A.M.* and Plaintiff would likely be barred from bringing this action based on principles of *res judicata*.

Because Plaintiff has virtually no chance of succeeding on her claims that the Mortgage is unenforceable or that the foreclosure violated Mich. Comp. Laws § 600.3204(3), and because in any event Plaintiff likely lacks standing and her claims likely are barred by *Rooker-Feldman* and/or res judicata, the Court DENIES Plaintiff's motion for injunctive relief. "Although no one [of the four relevant] factors is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales*, 225 F.3d at 625.

### B. Irreparable Harm

Although Plaintiff's inability to demonstrate any reasonable chance of success on the merits should be sufficient to justify denying her request for injunctive relief, the Court also notes that Plaintiff has made an insufficient showing of irreparable harm. In establishing the element of irreparable harm, a party seeking an injunction bears a heavy burden and must demonstrate more than an unfounded fear of harm. There must be a showing that the asserted harm is likely to occur:

> In evaluating the harm that will occur depending upon whether or not the stay is granted, we generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. In evaluating the degree of injury, it is important to remember that [t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (internal citations and quotation marks omitted). Plaintiff's vague allusions to the "trauma of eviction" fall far short of the showing necessary to establish the element of irreparable harm. She does not allege that she would be unable to obtain alternate housing or that she faces any real or imminent threat of homelessness.

    **C.**    **Harm to the Defendants and the Public Interest**

Plaintiff makes only a passing reference to these elements, she fails to rebut or even to address Defendants' contention that they will suffer substantial harm and fails to convince the Court that either factor tips the balance in her favor.

**IV.**    **CONCLUSION**

Because Plaintiff has failed to establish a likelihood of success on the merits, has failed to demonstrate irreparable harm, has failed to refute Defendants' claim of substantial harm and has not demonstrated any public interest requiring the Court to order the relief she seeks, the Court DENIES Plaintiff's claim for injunctive relief.

IT IS SO ORDERED.

Dated: 2-27-12

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE